J-S46011-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| NATHANIEL BRABHAM, | : | |
| | : | |
| Appellant | : | No. 59 MDA 2014 |

Appeal from the Judgment of Sentence Entered August 26, 2013,
In the Court of Common Pleas of York County,
Criminal Division, at No. CP-67-CR-0007086-2012.

BEFORE:  SHOGAN, LAZARUS and MUSMANNO, JJ

MEMORANDUM BY SHOGAN, J.:                **FILED AUGUST 29, 2014**

Appellant, Nathaniel Brabham, appeals from the judgment of sentence entered following his conviction of criminal conspiracy to deliver cocaine. For the reasons that follow, we affirm.

The facts are as follows:

On the evening of June 14, 2012, Officer Benjamin Smith and other members of the York City Police Department's Neighborhood Enforcement Unit conducted an undercover buy/bust operation involving illegal narcotics. The officers did not have a particular target for the operation; rather, the plan was to position a confidential police informant ("the CI") in an area known for drug activity and have the CI attempt to purchase illegal drugs.

Officer Smith provided the CI with pre–recorded currency to purchase narcotics and described the parameters of the operation so that the officers involved could keep her under constant surveillance.  If the CI completed a

drug transaction, she was instructed to signal the officers by "mess[ing] with her ponytail." N.T. (Trial), 7/8/13, at 87.

Officer Kyle Pitts conducted surveillance with binoculars in a Miles Muffler shop located across the street from the target area. From this vantage point, Officer Pitts witnessed the CI make contact with a man, later identified as Appellant, sitting on the front steps of 25 South West Street. Appellant and the CI talked briefly, after which Pitts saw Appellant appear to dial a number on a cellular telephone and have a short conversation.

After approximately twenty minutes, a gold-colored Pontiac GrandAm drove into the area and parked. The CI approached the passenger side of the vehicle and Appellant approached the driver's side. Shortly thereafter, the CI backed away from the vehicle and gave the pre–determined ponytail sign that a drug transaction had occurred. Officer Pitts notified the other participating officers that the controlled buy happened, provided a description of the suspect and his location, and requested that they move in to effectuate an arrest. Officer Pitts observed Officers Tiffany Vogel and Larry Lawrence take Appellant into custody. Officer Pitts also watched the CI walk back towards the location where Officer Smith was waiting. Before Officer Pitts lost his visual of the CI, Officer Smith radioed confirming that he had the CI in his sights.

When Officer Smith and the CI re–connected, the CI produced a tied–off baggie corner that contained a rock–like substance and twenty–two dollars of remaining official funds. The substance in the baggie field–tested positive for the presence of cocaine. At trial, it was stipulated that the Pennsylvania State Police Crime Laboratory report identified the substance in

question as cocaine, a Schedule II substance that weighed eleven–hundredths of a gram. N.T. (Trial), 7/8/13, at 93–95; Commonwealth Ex. 2.

After Appellant's apprehension, he was transported to the police station where Officer Lawrence delivered the standard *Miranda*[1] warnings. Appellant signed a form indicating that he understood his rights and waived his right to remain silent. Appellant told Officer Lawrence that a girl with a ponytail walked up to him and stated that she wanted to buy twenty dollars of rock cocaine. Appellant then placed a telephone call to a person known to him as "K[2]" informing him that he had a person interested in purchasing drugs. Appellant detailed that "K" appeared a few minutes later and sold the girl rock cocaine. Appellant also committed his statement to writing.

On June 15, 2012, Appellant was charged with delivery of cocaine. Later, on November 8, 2012, the Commonwealth filed an information replacing the charge of delivery of drugs with one count of criminal conspiracy to deliver drugs.

Subsequently, Appellant sent correspondence to the trial court expressing a desire to represent himself. On February 14, 2013, the trial court held a hearing on Appellant's self–representation request. As the court was satisfied that Appellant's waiver of counsel was knowing and voluntary, it granted Appellant's request and directed Assistant Public Defender Clasina Houtman to serve as stand–by counsel. N.T. (Pretrial Conference), 2/14/13, at 11. Later that day, Appellant filed an omnibus pretrial motion that

---

[1] *Miranda v. Arizona*, 396 U.S. 868 (1969).

[2] "K" was later identified as Aquil Hills. N.T. (Trial), 7/9/13, at 196.

-3-

included a motion to suppress statements that he made to police on the night of his arrest.

On April 23, 2013, the trial court held a hearing on Appellant's pretrial motion. The portion of the hearing relevant to this appeal concerned Appellant's request that his post–arrest statements to police be suppressed and focused primarily on the various officers' recollections of the interaction between Appellant and the CI. At the conclusion of the police testimony, the trial court denied Appellant's motion to suppress his post–arrest statements and determined that there was sufficient evidence to support a *prima facie* case of criminal conspiracy against Appellant.[3]

Immediately following the ruling on Appellant's pretrial motion, the trial court commenced a pretrial hearing. Appellant requested that Attorney Houtman resume her representation of him, and the trial court granted that request. N.T. (Pretrial Hearing), 4/23/13, at 78.[4] At this point, the trial court learned that Appellant wanted to file a motion to disclose the identity of the CI and it entertained an oral motion on that request. Although the trial court denied the motion for the disclosure of the CI's identity, it offered Appellant an opportunity to call the court's attention to any contradictory

---

[3]   Appellant did not testify at the pretrial hearing.

[4]   The transcript of proceedings for the hearing held on April 23, 2013, is titled "Habeas Corpus Hearing/Probation Violation Hearing." Appellant's omnibus pretrial motion that included the motion to suppress his post–arrest statements and a motion to disclose the identity of the CI were also litigated at this proceeding. To simplify, evidence elicited at this hearing regarding the suppression motion is described as "Suppression." The proceedings as related to the motion to disclose and all other matters will be referenced as "Pretrial Hearing."

legal authority on the disclosure issue. At no time did Appellant respond to this invitation or renew the motion for disclosure.

On July 8th and July 9th, 2013, Appellant was tried before a jury. Officers Smith, Pitts, and Lawrence testified for the Commonwealth and Appellant took the stand on his own behalf. At the conclusion of the jury's deliberations, Appellant was found guilty of criminal conspiracy to deliver cocaine.[5] On August 26, 2013, he was sentenced to a three–to–six–year term of imprisonment.

On September 4, 2013, Appellant filed post-trial motions that the trial court denied on December 18, 2013. This timely appeal followed.

Appellant presents three questions for review:

I. WHETHER THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION TO DISCLOSE THE IDENTITY OF THE CI BECAUSE THE CI WAS A NECESSARY WITNESS WHERE APPELLANT WAS CHARGED WITH CRIMINAL CONSPIRACY TO DELIVER COCAINE AS THE "MIDDLE MAN" AND THERE WAS A FACTUAL DISPUTE AT TRIAL AS TO WHETHER IT WAS APPELLANT, OR THE CI, WHO MADE THE PHONE CALL TO THE DRUG DEALER AND WHO PROVIDED THE PHONE NUMBER OF THE DRUG DEALER?

II. WHETHER THE COMMONWEALTH PRESENTED INSUFFICIENT EVIDENCE TO PROVE BEYOND A REASONABLE DOUBT THAT APPELLANT WAS GUILTY OF CRIMINAL CONSPIRACY TO COMMIT DELIVERY OF COCAINE BECAUSE THE COMMONWEALTH FAILED TO PRESENT ANY EVIDENCE SHOWING THAT (1) APPELLANT MADE AN AGREEMENT WITH AQUIL HILLS, THE DRUG DEALER, AND THAT HE (2) HAD THE INTENT TO BRING

---

[5] Aquil Hills pled guilty to delivery of a controlled substance, specifically, crack cocaine. N.T. (Trial), 7/9/13, at 196–197; Defense Ex. 5.

ABOUT THE CRIME OF DELIVERY OF COCAINE, AND THAT HE (3) DID ANY OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY?

III. WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE BECAUSE THE COMMONWEALTH'S EVIDENCE WAS NOT CREDIBLE WHERE: THE OFFICER WHO ENGAGED IN SURVEILLANCE WAS TOO FAR AWAY TO HAVE SEEN OR HEARD WHO MADE THE PHONE CALL TO THE DRUG DEALER AND WHAT WAS DISCUSSED; THE COMMONWEALTH NEVER CHARGED THE DRUG DEALER WITH THE CRIME OF CRIMINAL CONSPIRACY WITH APPELLANT, BUT RATHER ONLY WITH DELIVERY; AND THE COMMONWEALTH DID NOT CALL THE CI AND THE JURY WAS PERMITTED TO INFER THAT SHE WOULD HAVE TESTIFIED FAVORABLY FOR APPELLANT?

Appellant's Brief at 5.

We first consider the propriety of the trial court's denial of Appellant's motion to reveal the identity of the confidential informant. Appellant argues that disclosure was required to demonstrate that it was the CI, and not Appellant, who placed the telephone call to "K."

Our standard of review of a trial court's disposition of a request for disclosure of an informant's identity is confined to abuse of discretion. ***Commonwealth v. Washington***, 63 A.3d 797, 801 (Pa. Super. 2013). In instances where the confidential informant is an eyewitness to the events in question, the role of the trial court's discretion is dictated by Pennsylvania Rule of Criminal Procedure 573:

(2) *Discretionary With the Court*

(a) In all court cases, except as otherwise provided . . . if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested

items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

(i) the names and addresses of eyewitnesses . . . .

Pa.R.Crim.P. 573(B)(2)(a)(i).

The Commonwealth, nonetheless, retains a qualified privilege to withhold the identity of a confidential source. *Commonwealth v. Watson*, 69 A.3d 605, 607 (Pa. Super. 2013) (citations omitted). To overcome this qualified privilege and attain disclosure of a confidential informant's identity, Appellant "must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable." *Id*. at 608 (citation omitted). The party seeking disclosure need not reveal the exact parameters of the informant's possible testimony, but "he must demonstrate at least a reasonable possibility the informant's testimony will exonerate him." *Washington*, 63 A.3d at 801 (quoting *Commonwealth v. Withrow*, 932 A.2d 138, 140–141 (Pa. Super. 2007)). "Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." *Watson*, 69 A.3d at 608 (citing *Commonwealth v. Bing*, 713 A.2d 56, 58 (Pa. 1998))

To strike the appropriate balance, courts consider the following principles:

A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his

communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations[,] the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

No fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

***Commonwealth v. Marsh***, 997 A.2d 318, 322 (Pa. 2010) (citations omitted).

In deciding Appellant's oral motion to disclose, the trial judge stated the following:

Given [Appellant's] own statement as to his actions that night with regards to phoning "K," [the court] think[s] on balance that the Commonwealth should not be required to reveal the identity of the confidential source . . . . [I] don't think revealing the [CI's] identi[t]y is going to exonerate or would lead to any exonerating evidence, given [Appellant's] very own statements and the observations of the officer.

N.T. (Pretrial Hearing), 4/23/13, at 82.

Despite its reference to the "balance," the trial court, in essence, determined that Appellant failed to make the threshold showing that the identity of the CI was material to his defense. As further explained in the trial court's Pa.R.A.P. 1925(a) opinion:

In this case, Officer Pitts testified that he observed Defendant pull out a cell phone and appear to make a call shortly after coming into contact with the CI. (N.T., 4/23/13, page 27). The Officer also testified that at no time did he either

see the CI with a phone, that he did not see Defendant hand the CI his phone, nor did he see the CI make a phone call (N.T., 4/23/13, pages 34-36). Moreover, the Officer was using binoculars to assist with the surveillance. (N.T., 4/23/13, page 25). In addition to the Officer's testimony, Defendant admitted in his own oral and written statements to Officer Lawrence that he used his own phone to call "K" to get the drugs for the CI (N.T., 4/23/13, pages 50-52); Commonwealth's Exhibit # 2). This evidence directly undermines the Defendant's claim that he is not the one who called "K." Therefore, Defendant has failed to show that the identity of the confidential informant is material to the defense, and did not overcome the qualified privilege of the Commonwealth to withhold the identity of the CI.

Trial Court Opinion, 3/24/14, at 4.

We discern no abuse of discretion in the trial court's ruling denying disclosure. The police officers testified at the pretrial motion hearing that the CI was under constant surveillance. After Officer Smith instructed the CI on the specifics of the buy/bust operation, he relayed her description to the other officers involved and informed them that she was on the move. Officer Smith continued observing the CI until Officer Pitts radioed that he had her in his view. N.T. (Suppression), 4/23/13, at 9–13.

From his location in the muffler shop, Officer Pitts witnessed the CI conversing with Appellant after which Appellant appeared to place a telephone call. N.T. (Suppression), 4/23/13, at 27. Officer Pitts further attested that he did not see the CI with a telephone, never saw Appellant hand the CI a telephone, nor did he observe the CI place a telephone call. *Id*. at 35–36.

Additionally, as emphasized by the trial court, Appellant's own oral and written statements offer compelling evidence that he was the person who telephoned "K." After Appellant waived his ***Miranda*** rights, he told Officer

-9-

Lawrence that a girl with a ponytail walked up to him and stated that she wanted to buy twenty dollars of rock cocaine. N.T. (Suppression), 4/23/13, at 46–47. Appellant then related that he called a "guy" he knew as "K" and told him that "he had someone that wanted to buy a 20." *Id*. at 47. Appellant detailed that "K" appeared a few minutes later and "sold the girl with the ponytail $20 worth of rock cocaine." *Id*.

Appellant also authored a written statement revealing that he had called "K" for drugs on prior occasions. Sometimes "K" responded quickly; other times he refused Appellant's request for drugs. N.T. (Suppression), 4/23/13, at 49; Commonwealth Ex. 2. Regarding "K's" response to a telephone call on the night in question, Appellant recounted, "[T]oday when this girl call him, she said that he could not come because his boss was there. I ask him for some drugs because of my birthday to give a girl for sex." *Id*.

Because Officer Lawrence felt the need to clarify the information in Appellant's written statement, he fashioned a supplemental written question–and–answer section designed to explain some inconsistencies. In relevant part, the supplement read:

> Q: Lawrence
>
> A: Brabham
>
> Q: Did you call "K" today to get drugs for a girl with a ponytail?
>
> A: Yes I call for her a $20 . . . .
>
> Q: Where were you at when you called "K" to get the girl with the ponytail drugs?

-10-

A: On my porch then I went in [then] came back and called . . . .

Q: When the police arrested you on the porch, the cell phone that was in your possession, was it the phone you used to call "K?"

A: Yes.

N.T. (Suppression), 4/23/13 at 49–52; Commonwealth Ex. 2. This written supplement explained away any ambiguity regarding the person who called "K" to consummate the drug deal.

While we accept Appellant's position that his conspiracy conviction was premised primarily on whether he placed the telephone call, we reject his contention that disclosure of the CI's identity was mandated because his guilt was based solely on Officer Pitts's testimony from a single observation. It is apparent from both the trial court's oral statement at the conclusion of the pretrial hearing and its subsequent written opinion that the request for disclosure was thwarted primarily by Appellant's own admissions to the police that he was the person who telephoned "K." These statements, in conjunction with the officers' testimonies regarding surveillance of the CI and the target area, defeated Appellant's threshold materiality finding. Accordingly, we conclude that the trial court properly denied Appellant's motion to compel disclosure of the confidential informant.

We next consider Appellant's claim challenging the sufficiency of the evidence supporting his conviction of criminal conspiracy. Appellant argues that the Commonwealth failed to prove that he: (1) made an agreement

with his co-conspirator, Aquil Hills; (2) intended to commit the crime of delivery of cocaine; and (3) did any overt act in furtherance of a conspiracy.

When examining a challenge to the sufficiency of the evidence:

> [t]he standard we apply . . . is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Orr*, 38 A.3d 868, 872–873 (Pa. Super. 2011) (quoting *Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa. Super. 2011)). This standard is similarly applicable in cases where the evidence is circumstantial rather than direct, "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Santiago*, 980 A.2d 659, 662 (Pa. Super. 2009) (quoting *Commonwealth v. Johnson*, 818 A.2d 514, 516 (Pa. Super. 2003)).

To sustain a conviction for criminal conspiracy, the Commonwealth must prove that a defendant entered into an agreement to commit or aid in an unlawful act with another person; that he and that person shared a

criminal intent; and that an overt act was taken in furtherance of the conspiracy. 18 Pa.C.S.A. § 903; **Commonwealth v. Smith**, 69 A.3d 259, 263 (Pa. Super. 2013). "'An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities.'" **Commonwealth v. Kinard**, ___ A.3d ___, 2014 PA Super 41, at *12 (Pa. Super. filed March 4, 2014) (quoting **Commonwealth v. Johnson,** 719 A.2d 778, 785 (Pa. Super. 1998) (*en banc*)). The conspiratorial agreement "'can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode.'" **Commonwealth v. Watley**, 81 A.3d 108, 116 (Pa. Super. 2013) (quoting **Commonwealth v. Feliciano**, 67 A.3d 19, 25–26, 1147 (Pa. Super. 2013)). We have held additionally that an overt act need not be committed by the defendant; it need only be committed by a co-conspirator. **Commonwealth v. Hennigan**, 753 A.2d 245, 253 (Pa. Super. 2000) (quotation omitted).

Appellant contends that the evidence supporting his conspiracy conviction was deficient for a number or reasons, all of which, to some extent, implicate the evidence surrounding the telephone call to "K." First, Appellant claims that the Commonwealth failed to establish that he entered into an agreement to commit or aid in an unlawful act. Appellant reasons that absent proof that he contacted "K," there is no substantiation of the required agreement element.

In this same vein, Appellant asserts that the evidence adduced at trial instead shows that the CI placed the telephone call to "K" and he chastises the police officers for their failure to examine call logs from his and the CI's telephones or to check the telephone records to determine if dialed calls were successfully completed. In his view, the only competent evidence offered about the telephone call was his testimony that he handed a telephone to the CI and she then placed the call. N.T. (Trial), 7/9/13, at 166. He bolsters this argument with reference to certain inconsistencies in Officer Smith's and Officer Pitts's statements in prior proceedings about the person placing the telephone call to "K" and urges that these testimonial incongruities cast doubt upon Appellant's role in the transaction.

We disagree that the evidence presented at trial was insufficient to support a finding that Appellant called "K" to facilitate a drug transaction. Appellant acknowledged that "K" had previously given him his telephone number and had specified that Appellant should call him if he needed drugs. N.T. (Trial), 7/9/13, at 180. Officer Smith testified as to the details of the buy/bust operation and his interaction with the CI. N.T. (Trial), 7/8/13, at 77–90. Any conflict in Smith's testimonies in prior proceedings concerning the CI's account of the telephone call is irrelevant, as he did not offer any evidence at trial concerning their dialogue for the jury to consider.

Officer Pitts's trial testimony described the activity he witnessed among Appellant, the CI, and the gold vehicle, including a declaration that the CI did not make any telephone calls. N.T. (Trial), 7/8/13, at 115. This

-14-

recollection varied from his testimony at the preliminary hearing that he "did not recall" whether the CI used her telephone. N.T. (Preliminary Hearing), 9/25/12, at 20. While we recognize that Officer Pitts's definitive trial testimony concerning the CI's telephone use differed from his less decisive, "I don't recall" preliminary hearing testimony, the prior inconsistent statement, if it can even be characterized as such, was called to the jury's attention and they were free to consider the discrepancy to impeach Officer Pitts's credibility. *See Commonwealth v. Badman*, 580 A.2d 1367, 1370 (Pa. Super. 1990) (in criminal proceeding, credibility of witness may be impeached with evidence of prior statement inconsistent with witness's present testimony).

We conclude that the telephone call evidence, viewed favorably to the Commonwealth, was sufficient for the factfinder to determine that Appellant called "K" to arrange a drug deal, thereby establishing an arrangement to deliver narcotics. The jury decided that the credible evidence proved the existence of this illegal agreement and we discern no reason to disturb its verdict.

Appellant next disputes the evidentiary worth of his post–arrest statements to Officer Lawrence. On the night of his arrest, Appellant orally recounted that he called "K" to facilitate a drug transaction. N.T. (Trial), 7/8/13, at 139–140. Appellant's written statement confirmed his middle–

man status. Although Appellant initially used some confusing language concerning the details of the telephone call, Officer Lawrence created the supplemental written question–and–answer section to clarify Appellant's statement. N.T. (Trial), 7/8/13, at 143. In this portion of the written statement, Appellant thrice admitted that he was the person who placed the telephone call to "K." *Id*. at 145–149; Commonwealth Ex. 4–5.

Appellant attributes the conflicting renditions in his oral and written statements concerning the telephone call to "K" to the fact that he is a diabetic and his blood sugar levels were low after his arrest. Appellant claims that although he alerted Officer Lawrence to his medical condition, the officer proceeded with the questioning. N.T. (Trial), 7/9/13, at 169.

Appellant's grievance that his confusion about the events was occasioned by the officers' disregard for his medical condition is not corroborated by the record. While Appellant testified that he informed the officers that he was diabetic and that his sugar levels were low, he never requested medical treatment. Indeed, he indicated to Officer Lawrence that he did not have any trouble talking to the officer because in "[his] heart, [he] did nothing wrong." N.T. (Trial), 7/9/13, at 169. Additionally, Officer Lawrence did not recall Appellant mentioning his diabetes or requesting medical attention. N.T. (Trial), 7/8/13, at 156.

Appellant's final sufficiency challenge involves the intent and overt act elements of conspiracy. Appellant maintains simply that the absence of evidence that he communicated with "K" abrogates proof of a shared intent to deliver cocaine.

We previously determined that it was reasonable for the jury to find that Appellant and "K" agreed to provide the CI with drugs. Based on the evidence that, shortly after the telephone call was placed, "K" arrived with the drugs and sold same to the CI, it was likewise reasonable for the jury to conclude that Appellant and "K" collectively intended to deliver a controlled substance to the CI.

With regard to the overt act element of the offense, the Commonwealth was not required to prove that Appellant committed an act in furtherance of the conspiracy. According to 18 Pa.C.S.A. § 903(e), it need only demonstrate that an overt act is "alleged and proved to have been done by him or by a person with whom he conspired." *See also Hennigan,* 753 A.2d at 253 (overt act need not be committed by defendant; it need only be committed by co-conspirator). The evidence here established that "K" brought the drugs to the sale site and consummated the drug deal, thereby committing the requisite overt act. Accordingly, the Commonwealth presented sufficient evidence of a criminal conspiracy on June 14, 2012, and the record supports Appellant's conviction.

We next address Appellant's argument that his conviction was against the weight of the evidence. Pa.R.Crim.P. 607 instructs, in part, that a claim that the verdict was against the weight of the evidence must be raised with the trial judge in a motion for a new trial in a written or oral motion before the court prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(A)(1)–(3). Here, Appellant filed post-trial motions raising a weight of the evidence claim on September 4, 2013, that the trial court denied on December 18, 2013. Appellant has thus preserved his weight of the evidence claim for appellate review.

"A challenge to the weight of the evidence is directed to the discretion of the trial judge, who heard the same evidence and who possesses only narrow authority to upset a jury verdict." *Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. 2011) (citation omitted). Relief cannot be based merely on "'some conflict in testimony or because the judge would reach a different conclusion on the same facts.'" *Id*. (quoting *Commonwealth v. Blakeney*, 946 A.2d 645, 653 (Pa. 2011)). Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" *Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa. Super. 2014) (quoting *Commonwealth v. Widmer*, 744 A.2d 745, 752 (Pa. 2000)). The trial court must accord substantial deference to the

jury's discretion to evaluate the credibility of witnesses to "determine whether their testimony, if believed, establishes the elements of the offense charged." **Commonwealth v. Stays**, 70 A.3d 1256, 1267 (Pa. Super. 2013). If that evidence is legally sufficient, the trial court may grant a new trial based on evidentiary weight only if the jury's verdict is so contrary to the evidence as to shock one's sense of justice. **Id**.

Appellate scrutiny of a weight of the evidence issue is governed by the principles set forth in **Commonwealth v. Champney**, 832 A.2d 403 (Pa. 2003):

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

**Id**. at 408 (citations omitted).

Appellant contends that the verdict was against the weight of the credible evidence because: (1) the officer engaged in the surveillance was too far away to have seen or heard who placed the telephone call to "K;" (2) "K" was charged with a delivery offense as opposed to a charge that he conspired with Appellant to deliver narcotics; and (3) the Commonwealth did

-19-

not call the CI as a witness, allowing the jury to infer that she would have testified favorably for Appellant.

The trial court addressed each of Appellant's contentions concerning the weight of the evidence. First, after reviewing the specifics of Officer Pitts's visual surveillance of Appellant and the CI, the trial court opined that the trustworthiness of Officer Pitt's testimony was a matter of credibility for the jury to decide. Trial Court Opinion, 3/21/14, at 9. The court further determined that Appellant's complaint that Officer Pitts was unable to describe the content of the telephone conversation was groundless because there was no claim by the Commonwealth that Officer Pitts heard anything. *Id*. at 10.

Next, in regard to the delivery offense lodged against "K" as a result of the buy/bust operation, the trial court dismissed the import of the different crimes charged. The trial court reasoned that

> the path of prosecution, or non-prosecution, of a defendant's alleged co-conspirator(s) is irrelevant as to the prosecution of the defendant. Rather, all that is required is proof of the elements of conspiracy, one of which is that the defendant conspired with one or more persons to commit or plan a crime.

Trial Court Opinion, 3/21/14, at 10 (quoting *Commonwealth v. Fremd*, 860 A.2d 515, 521–522 (Pa. Super. 2004)).

Finally, the trial court addressed Appellant's assertion that the Commonwealth's failure to call the CI as a witness allowed the jury to infer that she would have testified in his favor. Describing this argument as "puzzling," the trial court recounted its pretrial decision that the CI was not a necessary witness and that her identity would not be disclosed. Trial Court

Opinion, 3/24/13, at 11. The trial court also noted that at Appellant's request, it charged the jury as follows on the permissible inferences it could draw from the Commonwealth's failure to call the CI as a witness:

> There is a question about what weight, if any, you should give to the failure of the Commonwealth to call the confidential informant as a witness. If three factors are present and there is no satisfactory explanation for a party's failure to call a potential witness, the Jury is allowed to draw a common–sense inference that her testimony would have been unfavorable to that party. The three necessary factors are: First, the person is available to that party only and not to the other; Second, it appears the person has special information material to the issue; and, Third, the person's testimony would not be merely cumulative.
>
> If you find these three factors present, and you find there is no satisfactory explanation for the Commonwealth's failure to call the confidential witness, confidential informant to testify, you may infer, but only if you choose to, that her testimony would have been unfavorable to the Commonwealth.

N.T. (Trial), 7/9/13, at 248–249.

The trial court posited that the instruction likely worked to Appellant's benefit, particularly because there was no indication that the CI would have testified favorably to Appellant. The trial court further reasoned that the jury was free to credit Officer Smith's trial testimony, if trustworthy, regarding the safety concerns attendant to protecting the identity of confidential informants. Trial Court Opinion, 3/24/13/ at 12. The trial court thus concluded that the jury's verdict was not so contrary to the evidence as to shock one's sense of justice and warrant a new trial. *Id*.

After reviewing the record and trial transcripts, we conclude that the trial court did not abuse its discretion in finding Appellant's conviction was supported by the weight of the evidence. Nothing in Appellant's argument,

or in our assessment of the evidence, suggests that the jury's verdict should have shocked the trial court's sense of justice. Consequently, Appellant's challenge to the weight of the evidence must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2014