**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Mark S. FREMD, Appellant.**

Superior Court of Pennsylvania.

Argued June 1, 2004.

Filed Sept. 15, 2004.

Reargument Denied Nov. 18, 2004.

Paul R. Gettleman, Ambridge, for appellant.

Andrea F. McKenna, Asst. Dist. Atty., Harrisburg and Andrew E. Demarest, Asst. Dist. Atty., Lemoyne, for Com., appellee.

Before: DEL SOLE, P.J., JOYCE and BECK, JJ.

BECK, J.:

¶ 1 Appellant Mark Stuart Fremd, M.D., appeals from his judgment of sentence of 18 to 36 months of imprisonment plus 10 years probation following his convictions in Fayette County for three counts of prescribing and/or delivering controlled substances outside the scope of treatment

principles,[1] seven counts of insurance fraud,[2] one count of solicitation to deliver a controlled substance,[3] one count of criminal conspiracy to commit insurance fraud,[4] and one count of conspiracy to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge.[5] We affirm.

¶ 2 The convictions followed a four-day jury trial, encompassing Fayette County Criminal Action No. 931 of 2001, No. 386 of 2002 and No. 387 of 2002. By order dated May 21, 2002, the trial court consolidated the actions upon consideration of the senior deputy attorney general's petition to consolidate and the appellant's failure to appear and object. The charges in each of the criminal cases were brought pursuant to two presentments from multicounty investigating grand juries. The charges arose from conduct occurring in Connellsville, Fayette County, and in Bethel Park, Allegheny County, which are two of the three locations in which appellant had offices.

¶ 3 At trial, evidence was presented that appellant billed insurance carriers for medical services never performed, gave prescriptions and dispensed drugs to persons who did not medically need them, gave prescriptions to persons for individuals that appellant never examined, solicited sex as payment for drugs and medical treatments, and solicited a person to fill narcotics prescriptions written by appellant, sell the narcotics on the street and share the profits with appellant. Following the denial of his post-sentence Motion for New Trial and/or Arrest of Judgment, appellant appealed.

¶ 4 On appeal, appellant raises the following issues:

1. Should the court have arrested judgment on the charge of solicitation to deliver a controlled substance, 18 Pa.C.S.A. 902(a); 35 P.S. 780–113(a)(30) in that appellant was a licensed practitioner at the time?

2. Should the court arrest judgment on all cases and counts of cases involving criminal conspiracy wherein the conspiracy was formulated and began in Allegheny County and all of the overt acts occurred in Allegheny County?

3. Should the court arrest judgment at No. 387 of 2002, Count 2, conspiracy with Janet Matey to commit insurance fraud and Count 4 of No. 386 of 2002, conspiracy with Janet Matey to facilitate acquisition of a controlled substance where [appellant] was the only person charged with the conspiracy?

4. Should the jury have made the factual determination as to what dollar amount the aggregation of the six insurance frauds totaled out to be rather than the court when the amount of money lossed determined the offense gravity score?

5. Did Bethel Park police officer Randolph Kopler entrap [appellant] into prescribing narcotic pills for Kopler's girlfriend without first examining her?

6. Did the court error [sic] when it sentenced [appellant] on the narcotics conviction based upon a policy in

---

1. 35 P.S. § 780–113(a)(14).

2. 18 Pa.C.S.A. § 4117(a)(2) and (a)(6).

3. 18 Pa.C.S.A. § 902(a); 35 P.S. § 780–113(a)(30).

4. 18 Pa.C.S.A. § 4117(a)(3).

5. 18 Pa.C.S.A. § 903(a); 35 P.S. § 780–113(a)(12).

Fayette County that all first offenders receive the same sentence?

Brief for Appellant at 2.

¶ 5 Appellant's first issue on appeal concerns whether he, as a licensed physician, can be convicted for solicitation of a violation of section 113(a)(30) of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act ("Drug Act"). In furtherance of this argument, appellant claims that section 113(a)(14), which applies to licensed practitioners, would have been the appropriate charge. This issue is one of statutory interpretation, as to which our scope of review is plenary. *See Gustine Uniontown Assocs., Ltd. v. Anthony Crane Rental, Inc.*, 577 Pa. 14, 842 A.2d 334, 343 (2004).

¶ 6 Although the language of 35 P.S. § 780–113(a)(30) indicates that it governs the conduct of "a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board," we agree with the trial court that this issue is controlled by *Commonwealth v. Gordon,* 511 Pa. 481, 515 A.2d 558 (1986). In *Gordon,* a licensed pharmacist sold a prescription drug to a criminal informant without a prescription. *See id.* at 482, 515 A.2d at 559. The sale took place in a motel in exchange for cash, a prostitute and a motel room. *See id.* at 483, 515 A.2d at 559. Following a bench trial, the pharmacist was convicted under sections 113(a)(16) [6] and (30) of the Drug Act. *See id.* at 484, 515 A.2d at 559. On appeal, the Superior Court reversed the convictions on the grounds that sections 113(a)(16) and (30) specifically excepted licensed pharmacists. *See id.*

¶ 7 The Pennsylvania Supreme Court reversed the order of the Superior Court, rejecting the pharmacist's "assertion that his status as a licensed pharmacist qualifies him for the 'practitioner' exemption without regard to the nature of the transaction involved." *See id.* at 487, 515 A.2d at 561. The Supreme Court held that for the "practitioner" exemption to apply, the party claiming the exemption must have acted within the course of his professional practice. *See id.* at 486–87, 515 A.2d at 560–61.

> Our analysis of the entire Act compels the conclusion that the Legislature did not intend that an individual could, by obtaining a license as a pharmacist, then engage in conduct far from the trappings of the pharmacy and its business, which amounts to no more than an illicit, clandestine, street transaction, and then use the license as a shield to avoid prosecution for such conduct. ... Our reading of the Act convinces us that the separate systems [for regulating practitioners versus non-practitioners] are distinguished according to the nature of the transaction *and* the status of the individual involved. ... When a licensed pharmacist acts like a street pusher, he is not a "practitioner" and can be prosecuted under §§ 780–113(a)(16) and (30).

*Id.* at 487–88, 515 A.2d at 561.

¶ 8 The Supreme Court also rejected the pharmacist's claim that he should have been prosecuted under 35 P.S. § 780–113(a)(14). *Id.* at 488, 515 A.2d at 561. The Court found that section 113(a)(14) is "designed to prohibit the abuse of the practitioner's privilege to distribute drugs under the cloak of his privilege" and that the pharmacist did not act under that cloak but rather as a "common street

6. Although not at issue in the instant appeal, section 113(a)(16), like section 113(a)(30), prohibits certain conduct "by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board." 35 P.S. § 780–113(a)(16) and (30).

pusher." *See id.* Accordingly, the Supreme Court held that the Commonwealth properly prosecuted the pharmacist under sections 113(a)(16) and (30). *See id.*

¶ 9 In the instant action, appellant's conviction for solicitation to deliver a controlled substance under 35 P.S. § 780–113(a)(30) was supported at trial by the following evidence: Tina Marie Stockman was one of appellant's patients. Appellant treated Ms. Stockman, the live-in girlfriend of appellant's brother-in-law, for problems with her neck, shoulder and lower back. In the spring of 1999, Ms. Stockman was having financial problems and appellant suggested that she could sell Dilaudid, a controlled substance. Appellant suggested that Ms. Stockman could sell the Dilaudid for $20 a pill, keep $10 and give him $10. Appellant gave Ms. Stockman three prescriptions for Dilaudid. Ms. Stockman never sold the drugs and neither she nor appellant received any money for them. N.T. Day Two of Jury Trial Proceedings, 4/9/03, at 136–37, 139–42, 145.

¶ 10 Consistent with the holding of *Gordon*, we find that the mere fact that appellant is a licensed physician does not preclude him from being prosecuted for solicitation of a violation of section 113(a)(30) of the Drug Act. Further, although appellant attempts to distinguish *Gordon* based on the existence of a doctor-patient relationship between him and Ms. Stockman, the Commonwealth presented evidence indicating that the specific conduct charged under section 113(a)(30) was unrelated to appellant's treatment of Ms. Stockman as a patient and, therefore, not in the course of his professional practice. Accordingly, appellant was not precluded, as a matter of law, from being convicted for solicitation of a violation of section 113(a)(30) of the Drug Act.

¶ 11 Appellant next claims that the trial court should have arrested the judgments on five specific counts [7] because the alleged criminal conduct relating to those counts occurred in Allegheny County and, consequently, the Fayette County Court of Common Pleas did not have jurisdiction. Appellant first raised this issue in his Motion for a New Trial and/or Arrest of Judgment, where he claimed that the trial court did not have "subject matter jurisdiction." In his Supplemental Motion for a New Trial/Arrest of Judgment, appellant generally alleged that the trial court did not have "jurisdiction." Based on the record, the first time appellant made any reference to venue was in his appellate brief.

¶ 12 Appellant's claim that the Fayette County Court of Common Pleas did not have subject matter jurisdiction over criminal conduct occurring in Allegheny County is without merit. "[A]ll courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." *Commonwealth v. Bethea*, 574 Pa. 100, 113, 828 A.2d 1066, 1074 (2003). Further, to the extent appellant now tries to argue improper venue, he has failed to preserve that issue by failing to raise it in the lower court. *See* Pa.R.A.P. 302 (providing that "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *see also Commonwealth v. Kelley*, 444 Pa.Su-

---

7. The five counts for which appellant raises this issue are Count VII of No. 931 of 2001, Count I of No. 386 of 2002, and Count II of No. 386 of 2002, each for prescribing and/or delivering controlled substances outside the scope of treatment principles; Count IV of No. 386 of 2002 for conspiracy to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge; and Count II of No. 387 of 2002 for conspiracy to commit insurance fraud.

per. 377, 664 A.2d 123, 126 (1995) (holding that change of venue issue was waived because it was not raised in omnibus pre-trial motion).

■ ¶ 13 In his third issue, appellant claims that the judgment on two of his conspiracy convictions should be arrested because he was the only person charged with the conspiracy. In other words, appellant challenges whether a criminal defendant can be convicted of conspiracy when none of the alleged co-conspirators have been charged. This issue involves a question of law, for which our scope of review is plenary. *See Commonwealth v. Cruz,* 578 Pa. 325, 852 A.2d 287, 292 (2004).

¶ 14 Although this issue appears to be one of first impression, we are guided by precedential decisions of both this Court and the Pennsylvania Supreme Court. First, we note that the statute on conspiracy provides:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903. Thus, the express language of the statute does not require that an alleged co-conspirator be charged or convicted of the conspiracy. Moreover, our Courts have held that the acquittal of a defendant's sole alleged co-conspirator does not preclude prosecution and conviction of that defendant on a conspiracy charge. *See Commonwealth v. Campbell,* 539 Pa. 212, 651 A.2d 1096 (1994) (holding that acquittal of sole alleged co-conspirator does not *per se* preclude conviction of remaining defendant, even if defendants are jointly tried); *Commonwealth v. Byrd,* 490 Pa. 544, 417 A.2d 173 (1980) (holding that subsequent acquittal of only alleged co-conspirator at separate trial did not require reversal of conviction for conspiracy); *Commonwealth v. Phillips,* 411 Pa.Super. 329, 601 A.2d 816 (1992) (holding that prior acquittal of sole alleged co-conspirator in separate trial does not preclude finding subsequently tried co-conspirator guilty of conspiracy); *see also Commonwealth v. Hatch,* 416 Pa.Super. 428, 611 A.2d 291 (1992) (finding Commonwealth's *nolle prosse* of alleged co-conspirator did not preclude finding defendant guilty of conspiracy in subsequent trial).

■ ¶ 15 Relying on these cases, as well as cases supporting the rule of consistency [8] (which has basically been overruled by the above-cited cases), appellant wrongfully concludes that "at least two people must initially be charged with criminal conspiracy in order for the prosecution to go forward." Brief for Appellant at 15. To the contrary, we find that these cases indicate that the path of prosecution, or non-prosecution, of a defendant's alleged co-conspirator(s) is irrelevant as to the prosecution of the defendant. Rather, all that is required is proof of the elements of conspiracy, one of which is that the defendant conspired with one or more persons to

---

**8.** *The rule of consistency requires consistent verdicts for co-conspirators. This rule developed from the pre-twentieth century English appellate system, where appellate review was limited and did not include review of the evidence presented at trial. Thus, an inconsistent verdict in a conspiracy trial was not reviewable for sufficiency of the evidence. The rule of consistency developed to protect defendants from jury prejudice or misapplication of the law. See Campbell,* 539 Pa. at 216 n. 2, 651 A.2d at 1099 n. 2.

commit or plan a crime. *See Common-wealth v. Brown*, 229 Pa.Super. 67, 323 A.2d 845, 847 n. 3 (1974) (stating in dicta that "[i]t is not necessary for an indictment for conspiracy to be brought against all the conspirators and it is not necessary that all the parties to a conspiracy be named, so long as it appears that two or more persons conspired to commit the offense charged"). Accordingly, we find appellant's third issue to be without merit.

¶ 16 Appellant's fourth issue—that the jury should have determined the aggregate amount associated with the insurance fraud convictions because that amount determined the offense gravity score—also lacks merit. First, the trial court properly recognized that the crime of insurance fraud is a felony of the third degree. 18 Pa.C.S.A. § 4117(d); N.T. Sentence Proceedings, 5/23/03, at 27, 30, 32–36. Second, although the trial court referenced the aggregate amount and indicated that it would result in a gravity score of eight *if* the convictions were for theft, the court did not assign a gravity score of eight. Rather, for each of the insurance fraud convictions for which a sentence was imposed, the trial court assigned a gravity score of four, which is the gravity score assigned to insurance fraud under the sentencing guidelines. 204 Pa.Code § 303.15; N.T. Sentence Proceedings, 5/23/03, at 24–25, 27, 30, 32–36. Further, the sentences imposed for the insurance fraud convictions fell within the standard range indicated in the sentencing guidelines.[9] Accordingly, the rule expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that any fact other than a prior conviction that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, is not implicated.

¶ 17 Appellant's claim that he was entrapped as a matter of law also fails. "Whether an entrapment has occurred is normally a question for the jury unless the evidence points to only one possible conclusion; in that case, it may be decided as a matter of law." *Commonwealth v. Lebo*, 795 A.2d 987, 993 (Pa.Super.2002).

¶ 18 Appellant's entrapment claim relates to one of his convictions for prescribing controlled substances outside the scope of treatment principles. The particular conviction at issue arose from appellant's writing several prescriptions for narcotics in the name of Jamie McClelland, without ever physically examining her or taking her medical history. McClelland's boyfriend, Randall Kopler, requested the prescriptions, which appellant gave directly to Kopler. At the time, Kopler was one of appellant's patients and a Bethel Park police officer.

¶ 19 At trial, Kopler admitted that he was developing a "pill problem" while he was appellant's patient. N.T. Day Two of Jury Trial Proceedings, 4/9/03, at 132. Kopler testified that he was worried about the number of prescriptions for controlled substances that he was getting, so he told appellant that McClelland had back pain and asked for prescriptions for her. *Id.* at 112–15, 126–27. Appellant gave Kopler the prescriptions, which Kopler filled and took himself. *Id.* at 113, 123–24. Appellant knew that Kopler was a police officer. *Id.* at 118–19; N.T. Day Three of Jury

---

**9.** For each insurance fraud conviction for which a sentence was imposed, the trial court imposed a sentence of 9–18 months. Each of these sentences were to run concurrently and four of five of them also included a two-year term of probation, each of which was to run consecutively to all other sentences. The standard sentencing range for a conviction of insurance fraud, accounting for appellant's prior record score of one, is restorative sanctions to 9 months of incarceration. 204 Pa. Code § 303.15 and 16.

Trial Proceedings, 4/10/03, at 113. Appellant testified that Kopler told him that it was legal to write the prescriptions for McClelland and give them to Kopler. N.T. Day Three of Jury Trial Proceedings, 4/10/03, at 114.

¶ 20 Appellant bases his entrapment claim on the evidence that Kopler was a police officer, requested the prescriptions for his girlfriend, and allegedly told appellant that it was legal for appellant to give Kopler prescriptions in McClelland's name. Appellant does not allege nor does the record reveal any evidence that Kopler was acting "for the purpose of obtaining evidence of the commission of an offense" or that Kopler was acting in his capacity as a police officer. *See* 18 Pa.C.S.A. § 313(a). Instead, the record shows that Kopler was acting for his own purposes.

¶ 21 The issue, then, is whether the conduct of a police officer acting in a personal capacity and not for the purpose of obtaining evidence of the commission of a crime can serve as the basis for an entrapment defense.

¶ 22 The statute for entrapment provides:

§ 313. Entrapment

(a) General rule.—*A public law enforcement official or a person acting in cooperation with such an official* perpetrates an entrapment if **for the purpose of obtaining evidence of the commission of an offense,** he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of proof.—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313 (emphasis added). The entrapment statute's express language requires that the public law enforcement official or person acting in cooperation with such an official, who allegedly induced or encouraged the accused to engage in criminal conduct, be acting "for the purpose of obtaining evidence of the commission of an offense." 18 Pa.C.S.A. § 313(a). Accordingly, we hold that a public law enforcement official acting in a personal capacity and not for the purpose of obtaining evidence of the commission of a crime cannot serve as the basis for an entrapment defense. 18 Pa.C.S.A. § 313(a); *see also Commonwealth v. Lindenmuth,* 381 Pa.Super. 398, 554 A.2d 62, 65 (1989) (2 judges concurring in the result) (stating rule that defendant enticed by third party cannot raise entrapment defense where inducing party acted as private citizen and not as government agent); *Krutikov v. United States,* No. 00 CV 6103(NG), 2004 WL 1555269, at *1 (E.D.N.Y. July 12, 2004) (holding entrapment defense failed as matter of law where alleged inducer was not acting as government agent at time he recruited defendant to join conspiracy, even though he later became an informant); *United States v. Wolf,* 23 C.M.R. 546, 552–54, 1957 WL 4558 (A.B.R.1957) (finding entrapment defense not available to defendant where alleged inducer, who was member of Army, was not acting in performance of official duties and, therefore, was not acting as government agent). Accordingly, appellant's claim that he was entrapped as a matter of law fails.

¶ 23 In his brief, appellant also argues that the police conduct was so out-

rageous as to bar conviction even if entrapment is not found. Appellant failed to raise this issue in the "Statement of Questions Involved" portion of his appellate brief and it is, therefore, waived. *See* Pa.R.A.P. 2116(a) (stating that "ordinarily no point will be considered which is not set forth in the statement of questions involved or suggested thereby"). Nevertheless, having found that Kopler was acting in an unofficial capacity and not as a police officer, we do not find the "police involvement" to be so outrageous that it bars appellant's conviction on due process grounds. *See Commonwealth v. Bonace,* 391 Pa.Super. 602, 571 A.2d 1079, 1081 (1990) (stating that "[b]efore finding conduct 'outrageous' we would be required to find extensive and nefarious *police involvement* in, and encouragement of, criminal activities") (emphasis added).

¶ 24 Finally, appellant contends that the trial court erred in sentencing him to the "high end of the standard range for the drug conviction in accordance with a local policy of Fayette County" and then refusing to modify said sentence.[10] Appellant's challenge goes to the discretionary aspects of his sentence,[11] so his right of appeal on this issue is not absolute. *See Commonwealth v. Bishop,* 831 A.2d 656, 660 (Pa.Super.2003). Rather, appellant must satisfy two procedural requirements before his challenge will be heard on the merits. First, appellant must "set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f). Second, appellant must show that there is a substantial question that the sentence imposed was not appropriate under the Sentencing Code. *See* 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); *Commonwealth v. Wright,* 832 A.2d 1104, 1107 (Pa.Super.2003). Appellant failed to include a Rule 2119(f) statement in his brief and, because the Commonwealth raised this failure in its brief, we are precluded from addressing the claim. *See Commonwealth v. Crosby,* 791 A.2d 366, 372 (Pa.Super.2002).

¶ 25 Even if appellant had met the requirements for review, we would not grant relief on this claim. "Sentencing is within the sound discretion of the trial court and will not be disturbed absent a showing of abuse of discretion." *See Wright,* 832 A.2d at 1107. Although the trial court's opinion states that appellant "was given the same high 'standard range' nine-month minimum sentence of incarceration that is local policy for every first-time narcotic drug dealer in this County," the record nonetheless indicates that the trial court imposed an individualized, and not a predetermined, sentence.

¶ 26 The sentencing record shows that the trial court had the benefit of a presentence report and relied on the sentencing guidelines.[12] Importantly, in its opinion, the trial court recognized that the guide-

---

10. Appellant did not specifically identify which "drug conviction" this alleged error concerns. However, appellant's brief refers to a "nine month sentence" and there is only one drug-related conviction for which a sentence of 9 to 18 months was imposed. Although that is most likely the sentence of which appellant complains, our discussion will include each of the drug-related convictions for which a sentence was imposed.

11. Appellant's sentences were all within the statutory maximums for his convictions. In fact, each of his sentences fell within the standard range indicated in the sentencing guidelines.

12. During sentencing, the trial court stated:
    Well, I have spent some considerable time reviewing the guidelines and the law and sentences that have been imposed on other individuals, and it is difficult to equate the crimes that are charged here with the types

lines, while intended to promote consistent and proportionate treatment of similar defendants, do not dictate a single specific sentence. Trial Court Opinion, 10/8/03, at 13. The trial court did not indicate any prejudice or bias, but rather stated "[i]t is my objective to sentence the defendant to the minimum sentence that is fair and just not only to the defendant, but also to the Commonwealth, and to other defendants who have be [sic] sentenced for similar crimes." N.T. Sentence Proceedings, 5/23/03, at 25. Furthermore, each of the sentences imposed for a drug-related conviction was *less* than the high end of the standard range under the guidelines.[13] None of the drug-related conviction sentences were imposed consecutively to each other.[14] Additionally, the trial court thoroughly analyzed each of the justifiable purposes of punishment as they related directly to appellant. Trial Court Opinion, 10/8/03, at 13–15. Based on the foregoing reasons, as well as the sentencing transcript and Trial Court Opinion in their entireties, we would find no abuse of discretion in the trial court's sentencing of appellant on any of the drug-related convictions.

¶ 27 Judgment of sentence affirmed.

of crimes that are commonly seen in this court. This is the first time, to my knowledge, that a number of these crimes have been—have resulted in convictions in Fayette County. *Yet, the sentencing guidelines give me a great deal of guidance.* N.T. Sentence Proceedings, 5/23/03, at 24 (emphasis added).

13. Appellant was only sentenced for three of the five drug-related convictions: 3 to 6 months for one count of delivering controlled substances outside the scope of treatment principles; 6 to 12 months for one count of solicitation to deliver controlled substances; and 9 to 18 months for one count of prescribing and/or delivering controlled substances outside the scope of treatment principles. The standard range for each of these convictions, accounting for appellant's prior record score of one, is 1 to 12 months.

14. All sentences of incarceration were imposed concurrently except for one 9 to 18 month sentence for prescribing and/or delivering controlled substances outside the scope of treatment principles, which was imposed consecutively to one of the 9 to 18 month sentences imposed for one of the insurance fraud convictions.