J-S05038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LEON PATRICK WAGNER | |
| Appellant | No. 1163 WDA 2014 |

Appeal from the Judgment of Sentence February 25, 2014
In the Court of Common Pleas of Venango County
Criminal Division at Nos: CP-61-CR-0000270-2013
and CP-61-CR-0000276-2013

BEFORE:  DONOHUE, SHOGAN, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 27, 2015**

Appellant Leon Patrick Wagner appeals from the Court of Common Pleas of Venango County's (trial court) February 25, 2014 judgment of sentence.  Upon review, we vacate the sentence and remand the case to the trial court for resentencing.

On June 6, 2013, Officer Steven Rembold, Oil City Police Department, charged Appellant with, *inter alia*, delivery of a controlled substance (heroin)[1] and conspiracy to deliver a control substance (heroin)[2] (First Case).  In his affidavit of probable cause accompanying the complaint, Officer Rembold alleged in part:

_____

[1] 35 P.S. § 780-113(a)(30).

[2] 18 Pa.C.S.A. § 903(a); 35 P.S. § 780-113(a)(30).

(3). On 09MAR13 at approx. 2014 I was dispatched to a male unconscious in the area between SouthSide Country Fair and CVS. Upon arrival I found a white male unconscious with wha[t] appeared to be agonal breathing. The male, later identified by a PA [driver's license I] located in his wallet as Raymond Hinojosa, was partially on the pavement of the CVS parking lot and partially on the wooded section between CVS and Country Fair.

(4) On 12MAR13 Ramond Hinojosa came on station with family members and spoke with Chief Wenner and advised that he was at a meeting and [Appellant] called his cell and asked [Hinojosa] to come over to [Appellant's] [r]esidence. Upon arrival Hinojosa stated that they [Appellant] and his girlfriend Kathy brought out heroin[] and a syringe and handed it to [Hinojosa]. Hinojosa stated there was an open fold of heroin[] on a mirror and what they handed him was a closed up fold of heroin[]. At that point Hinojosa stated he shot up the heroin[] and that was the last [thing] he remembers.

Affidavit of Probable Cause, 5/22/13 (capitalization omitted). On June 13, 2013, Officer Rembold filed another criminal complaint against Appellant, charging Appellant with, *inter alia*, illegal possession of a firearm under 18 Pa.C.S.A. § 6105(c)(2) (persons not to possess) (Second Case). In his affidavit of probable cause accompanying the second complaint, Officer Rembold alleged in pertinent part that "[w]hile serving warrant at [Appellant's] residence (2) firearms were in plain view. .22 cal rifle and a 30-06 rifle. Both rifles were seized and logged into evidence." Affidavit of Probable Cause, 6/3/13.

On November 15, 2013, a jury found Appellant guilty of all charged offenses in the First Case. On January 24, 2014, a jury found Appellant guilty of illegal possession of a firearm in the Second Case. For purposes of sentencing, the trial court consolidated both cases filed against Appellant. On February 25, 2014, the trial court sentenced Appellant to an aggregate of 5 ½ to 11 years in prison. Specifically, with respect to the delivery of heroin

conviction in the First Case, the trial court sentenced Appellant to the mandatory minimum sentence of 24 months' imprisonment, "because the jury found that it occurred within one thousand (1000) feet of a school zone" in violation of 18 Pa.C.S.A. § 6317 (drug-free school zones).[3]  On the Second Case, the trial court sentenced Appellant to three to six years' imprisonment consecutive to the sentence imposed in the First Case.

On March 6, 2014, Appellant filed a post-sentence motion, challenging his conviction for conspiracy to deliver heroin and the discretionary aspects of his sentence.  The trial court issued an order and opinion on June 9, 2014, denying the motion.  Appellant timely appealed to this Court.

Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion, largely adopting its June 9, 2014 opinion in support of its order denying Appellant's post-sentence motion.

On appeal, Appellant raises two issues for our review:

[1.] Is the [s]entence imposed upon [Appellant], although within the standard range, too harsh for the conduct he was found guilty of committing, and thus unreasonable, manifestly excessive and an abuse of discretion?

[2.] Was the evidence presented at the time of trial insufficient to sustain the guilty verdict in [the First Case] at [c]ount 2 [c]riminal [c]onspiracy/[d]elivery of [h]erion when [Appellant's] sole alleged co-conspirator was acquitted of the conspiracy charges and no other conspirators were alleged?

_____

[3] On the First Case, the trial court also sentenced Appellant to a consecutive sentence of six to 12 months' imprisonment for offenses not material to this appeal.

Appellant's Brief at 6.

We first address Appellant's second argument that the evidence at trial was insufficient to convict him of conspiracy to deliver heroin.

Preliminarily, "[a] claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of *wholly circumstantial evidence*. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014) (emphasis added), *appeal denied*, 95 A.3d 275 (Pa. 2014).

Section 903 of the Crimes Code, relating to criminal conspiracy provides in relevant part:

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

- 4 -

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
>
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
>     . . . .
>
> **(e) Overt act.--**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S.A. § 903(a), (e). "To sustain a conviction for criminal conspiracy, the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and (3) and overt act was done in furtherance of the conspiracy." *Commonwealth v. Hennigan*, 753 A.2d 245, 253 (Pa. Super. 2000) (citation omitted). "Because it is difficult to prove an explicit or formal agreement to commit an unlawful act, such an act may be prove[n] inferentially by circumstantial evidence, *i.e.*, the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators." *Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013). Thus, "[t]he Commonwealth does not have to prove that there was an express agreement to perform the criminal act; rather, a *shared understanding* that the crime would be committed is sufficient." *Commonwealth v. Nypaver*, 69 A.3d 708, 715 (Pa. Super. 2013) (emphasis added). Finally, we have identified four factors to be utilized in

- 5 -

determining the sufficiency of the evidence supporting the existence of a conspiracy:

> Among the circumstances which are relevant, but not sufficient by themselves, to prove a corrupt confederation are: (1) an association between alleged conspirators; (2) knowledge of the commission of the crime; (3) presence at the scene of the crime; and (4) in some situations, participation in the object of the conspiracy.

*Commonwealth. v. Lambert*, 795 A.2d 1010, 1016 (Pa. Super. 2002), citing *Commonwealth v. Carter*, 416 A.2d 523 (Pa. Super. 1979).

Here, Appellant appears to challenge only the first factor. In this regard, Appellant argues the Commonwealth failed to offer any evidence that his alleged co-conspirator, *i.e.*, his wife (Kathy Novak) who was **acquitted** of the conspiracy charge, was "part of the conspiracy whatsoever." Appellant's Brief at 14. We disagree. As the trial court noted, "there was more than enough evidence adduced from the various testimonies presented at trial by which the jury could convict [Appellant] on Count 2, Criminal Conspiracy – Deliver Heroin." Trial Court's Opinion, 6/9/14, at 9. The trial court summarized the testimonies as follows:

> Appellant and his wife[/co-defendant] were at their place of residence located in an apartment complex at 214 Lincoln Street, Oil City, Pa., ("Apartment"). Sometime between half past seven o'clock and ten minutes to eight o'clock that evening, Bill Exley ("Exley"), Joel Balot, ("Balot") and Raymond Hinojosa ("Hinojosa" or "Bookie") arrived in turn at the Apartment . . . . Prior to Exley's arrival, Balot testified he drove his minivan, a Dodge Caravan, to the Apartment in order to buy heroin from [Appellant] and Novak[, *i.e.*, his wife]. Balot further testified that when he knocked on the door, Novak answered and proceeded to let him in. According to the testimony of both Exley and Balot, Hinojosa or "Bookie" was already at the Apartment when they each arrived. Both Exley and Balot stated that when they each arrived at the Apartment, Bookie was

overdosing ("OD'ing"). According to Exley, Bookie was sitting on the couch in the Apartment gasping for air and unconscious. . . . In addition, Exley and Balot testified that they, along with [Appellant] and Novak, each attempted to revive Bookie by slapping him, getting air into him, and talking to him.

. . . .

The jury also heard from the victim, [Hinojosa], also known as Bookie. Bookie, the nephew of Novak, [Appellant's] wife, testified that he drove to the Apartment and arrived there about a quarter to eight on the evening of March 9, 2013. Bookie stated his purpose in going there was to visit his aunt, but that while he was there he was given two folds of heroin by [Appellant]. Bookie also testified that he had just completed sixteen (16) days of rehabilitation for heroin abuse five days prior to visiting his aunt and [Appellant]. Bookie stated that while Novak, his aunt, was present in the Apartment, he was handed the heroin by [Appellant]. Bookie testified he then "shot up" the heroin intravenously in the living room using supplies given [to] him by [Appellant]. [Bookie] further stated that both [Appellant] and [Novak] were present when he was using it. . . .

The jury also heard the testimony of Amy Baron ("Baron"), a tenant in the same apartment complex, whose apartment is situated directly beneath [Appellant] and Novak's apartment. [Baron] testified that she frequented their apartment in order to buy heroin to get her fix. In fact, that very evening, March 9, 2013, Baron called [Appellant's] apartment in order to buy narcotics.

*Id.* at 2-5 (internal record citation omitted). Based on our review of the entire record and viewing the evidence in the light favorable to the Commonwealth, thereby giving it the benefit of the reasonable inferences derived therefrom, we conclude that the Commonwealth presented sufficient evidence to sustain Appellant's conviction for conspiracy to deliver heroin. Indeed, in the matter *sub judice* there was a **strong association** between Appellant and his alleged co-conspirator by virtue of their marriage. **See Nypaver**, 69 A.3d at 715 ("Appellant was married to the perpetrator, and accordingly, there was a strong association between them."). Thus, it was reasonable for the jury to infer that Appellant had a shared understanding to

deliver the heroin. *Id.* As the trial court noted, "it stretches credulity to believe [Appellant] possessed such drugs without the knowledge or, at least, the tacit agreement of Novak. Moreover, Bookie testified that when he was given the heroin, only he, [Appellant], and Novak were present at the Apartment." *Id.* at 8. The jury, therefore, could have inferred by circumstantial evidence that Appellant engaged in a criminal conspiracy with his wife. Accordingly, given the circumstantial evidence, the trial court did not err in concluding that the jury had sufficient evidence to convict Appellant of conspiracy to delivery heroin.

To the extent Appellant argues he should not have been convicted for criminal conspiracy because his co-conspirator/wife was acquitted of the same during the joint trial, we disagree. "[O]ur Courts have held that the acquittal of a defendant's *sole* alleged co-conspirator does not preclude prosecution and conviction of that defendant on a conspiracy charge." *Commonwealth v. Fremd*, 860 A.2d 515, 521 (Pa. Super. 2004) (emphasis added), *appeal denied*, 889 A.2d 1213 (Pa. 2005), citing *Commonwealth v. Campbell*, 651 A.2d 1096, 1098 (Pa. 1994). "The express language of the statute does not require that an alleged co-conspirator be charged or convicted of the conspiracy." *Fremd*, 860 A.2d at 521. Furthermore, we have held that inconsistent verdicts are not a basis for reversal. *See Commonwealth v. Larsen*, 682 A.2d 783, 789 (Pa. Super. 1996). It is well-settled that juries may render inconsistent verdicts.

*See Commonwealth v. Coon*, 695 A.2d 794, 799 (Pa. Super. 1997), *appeal denied*, 717 A.2d 1027 (1998). "The rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. An acquittal cannot be interpreted as a specific finding in relation to some of the evidence." *Commonwealth v. Miller*, 657 A.2d 946, 948 (Pa. Super. 1995) (citation and quotation marks omitted). Inconsistent verdicts by a jury will not be disturbed, provided that the Commonwealth produces sufficient evidence of a crime for which the defendant is convicted. *Id.* Instantly, as noted above, the Commonwealth indeed produced sufficient evidence to sustain Appellant's conviction for conspiracy to deliver heroin.

Next, based on a recent panel decision of this Court in *Commonwealth v. Bizzel*, 107 A.3d 102 (Pa. Super. 2014), we must review the trial court's decision to sentence Appellant to a mandatory minimum sentence of 24 months' imprisonment for delivery of heroin in a school zone under Section 6317 (drug-free school zones) of the Crimes Code. In *Bizzel*, this Court ruled Section 6317 unconstitutional in its entirety based on *Newman*.[4] *Bizzel*, 107 A.3d at 106.

_____

[4] *Commonwealth v. Newman*, 99 A.3d 86 (Pa. Super. 2014) (*en banc*).

Initially, we point out that, pursuant to **Alleyne**,[5] Section 6317(b) is now an element of the crime despite the language in the statute specifically stating that **it was not an element**. Thus, the legislature clearly did not intend the result mandated by the decision in **Alleyne**.

Additionally, we conclude that [Section] 6317(b) cannot be severed from the rest of the statute because there would be no enforcement mechanism. In addressing a similar issue regarding **Alleyne** and 42 Pa.C.S. § 9712.1, this Court explained as follows:

> We find that Subsections (a) and (c) of Section 9712.1 are essentially and inseparably connected. Following *Alleyne,* Subsection (a) must be regarded as the elements of the aggravated crime of possessing a firearm while trafficking drugs. If Subsection (a) is the predicate arm of Section 9712.1, then Subsection (c) is the "enforcement" arm. Without Subsection (c), there is no mechanism in place to determine whether the predicate of Subsection (a) has been met.

> . . . **Newman**, 99 A.3d [at] 101 . . . . In the case at bar, after reviewing the language in [Section] 6317 pursuant to our rules of statutory construction, it is apparent that Section 6317(a) is the predicate arm and Section 6317(b) is the enforcement arm. Without 6317(b) there is no mechanism in place to determine whether the predicate enumerated in Section 6317(a) has been met.

> [T]he United States Supreme Court's decision in **Alleyne** rendered Section 6317(b) unconstitutional. In the instant case, after careful review and pursuant to the rules of statutory construction set forth in 1 Pa.C.S.[A.] § 1925, we conclude that the remainder of [Section] 6317 is inseparably connected with and dependent upon the unconstitutional provision in Section 6317(b). It cannot be presumed the General Assembly would have enacted the remaining provisions without Section 6317(b), and the remaining provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent. Therefore, we are constrained to hold that 18 Pa.C.S.[A.] § 6317 is unconstitutional.

*Id.* at 105-06 (emphasis in original) (footnotes omitted). Thus, given our decision in **Bizzel**, we must conclude that Appellant's sentence under

---

[5] **Alleyne v. United States**, 133 S. Ct. 2151, 2161-63 (2013) (holding that any fact other than a prior conviction that triggers a mandatory minimum sentence must be found by a jury beyond a reasonable doubt).

Section 6713 is illegal. *See Commonwealth v. Valentine*, 101 A.3d 801, 809 (Pa. Super. 2014) (because *Alleyne* issues implicate the legality of a sentence, they are non-waivable and we may raise them *sua sponte*); *see also Commonwealth v. Vargas*, 108 A.3d 858, 876 n.13 (Pa. Super. 2014) (*en banc*) ("Although Appellant has not raised any issue relating to the legality of his sentence, we note that legality of sentence questions are not waivable and may be raised *sua sponte* by this Court.") (citation and quotation marks omitted). Accordingly, we vacate Appellant's sentence and remand this case to the trial court for resentencing without the application of Section 6317.[6] *See Commonwealth v. Young*, 922 A.2d 913, 918 n.9 (Pa. Super. 2007) (where our disposition upsets the trial court's sentencing scheme, we must vacate and remand for resentencing).

Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/27/2015

_____

[6] Based on our decision to vacate Appellant's sentence, we need not address his first argument challenging the discretionary aspects of his sentence.

- 11 -