J-S15009-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| OUSSAMA MEDALLEL | : | |
| | : | |
| Appellant | : | No. 1676 MDA 2022 |

Appeal from the Judgment of Sentence Entered November 2, 2022
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s):  CP-35-SA-0000067-2022

BEFORE:  BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                    **FILED: JUNE 20, 2023**

Oussama Medallel appeals from the judgment of sentence of a $300 fine and court costs after the trial court convicted him of summary harassment following a trial *de novo*.  We affirm.

The trial court offered the following succinct summary of the underlying facts of this case:

> This case arises out of contentious divorce and custody matters involving [Appellant] and Jamie Medallel.  [Appellant] and Ms. Medallel share two minor children, A.M. and N.M.  At trial, there was extensive testimony about the animosity between [Appellant] and Ms. Medallel and Ms. Medallel's father, Allan McAndrew, the victim in this matter.

> The conflict in this family is not isolated to one incident, but the focus in this matter is an incident that occurred on March 20, 2022 where [Appellant] was cited by the Scranton Police Department for harassment.  The police responded to a doctor's office parking lot after Mr. McAndrew called 911.  Mr. McAndrew was watching N.M. in Ms. Medallel's car, while Ms. Medallel was seeking medical care for A.M.  At trial, the Commonwealth proved

beyond a reasonable doubt that [Appellant] followed Ms. Medallel and Mr. McAndrew in his vehicle to the doctor's office from a restaurant after an earlier confrontation and, rather than assist Ms. Medallel with their sick child, [Appellant] took the opportunity to pace around the vehicle Mr. McAndrew sat in with his grandchild N.M., stating to Mr. McAndrew, on two occasions, "I am going to take care of you."

Trial Court Opinion, 1/6/23, at 2 (citation omitted).

Police arrived at the scene and issued a non-traffic citation to Appellant for harassment. *See* Non-Traffic Citation, 7/11/22. Appellant pled not guilty, was convicted by the magisterial district court, and appealed to the Lackawanna County Court of Common Pleas. At a *de novo* trial, the Commonwealth presented Mr. McAndrew as its only witness. Appellant, appearing *pro se*,[1] testified on his own behalf and called as witnesses Ms. Medallel, who was inside the doctor's office when the incident occurred, and two police officers who arrived in response to the 911 call. At the conclusion of the trial, the court found Appellant guilty and sentenced him as indicated above. *See* N.T. Trial, 11/2/22, at 104.

Appellant filed a timely notice of appeal. The trial court ordered him to file a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) and Appellant, through retained counsel, timely complied. Appellant presents two questions for this Court's review: (1) "Did the Commonwealth fail to establish jurisdiction?" and (2) "Was the Commonwealth's evidence

_____

[1] Appellant declined to seek hired or appointed counsel following a colloquy by the court. *See* N.T. Trial, 11/2/22, at 4-5.

insufficient to sustain guilty verdicts beyond a reasonable doubt against Appellant?" Appellant's brief at 6 (cleaned up).

Appellant's first claim of error is that the trial court lacked jurisdiction to entertain this case. Subject matter jurisdiction is a legal question to which we apply *de novo*, plenary review. ***Commonwealth v. Bethea***, 828 A.2d 1066, 1071 n.5 (Pa. 2003).

Appellant's jurisdictional challenge is as follows:

> While the witnesses did state they were going to a physician's office in Scranton, and most of the relevant conduct occurred at the physician's office, there is nothing to connect Scranton to Lackawanna County. . . . [N]ever did anyone stipulate or prove that these events occurred in Scranton City, Lackawanna County. The only time Lackawanna County was mentioned, it was in a general, disconnected way to the instant offense. Even when the prosecutor introduced the case, he failed to link the City of Scranton to Lackawanna County. [Appellant] submits that while the case is merely a summary offense, that does not negate the [Appellant]'s rights nor somehow mitigate the prosecution's role to establish jurisdiction.

Appellant's brief at 12-13 (cleaned up).

Jurisdiction is a substantive issue that concerns "the competency of a court to hear and decide the type of controversy presented." ***Bethea***, *supra* at 1074. It is well-settled that "all courts of common pleas have statewide subject matter jurisdiction in cases arising under the Crimes Code." ***Id***. Whether a criminal case should be heard in a particular judicial district, on the other hand, is a question of venue and is a procedural matter. ***Id***. Venue for

criminal cases "belongs in the place where the crime occurred."[2] ***Commonwealth v. Gross***, 101 A.3d 28, 33 (Pa. 2014) (cleaned up). "Jurisdiction of subject matter can never attach nor be acquired by consent or waiver of the parties, while venue may always be waived." ***Bethea***, ***supra*** at 1073 (cleaned up).

Based upon the above, it is plain that the Lackawanna County Court of Common Pleas had subject matter jurisdiction over this criminal case. ***See Bethea***, ***supra*** at 1074. To the extent that Appellant is challenging venue in Lackawanna County, he waived the claim by raising it for the first time on appeal. ***See***, ***e.g.***, ***Commonwealth v. Fremd***, 860 A.2d 515, 520 (Pa.Super. 2004) (holding, after noting challenge to a county's jurisdiction over the case was meritless due to the court's statewide jurisdiction over criminal cases, that a challenge to the propriety of venue in that county was waived pursuant to Pa.R.A.P. 302(a) for failure to raise it in the trial court).

---

[2] The harassment statute provides as follows in relevant part as to venue:

> (1) An offense committed under this section may be deemed to have been committed at either the place at which the communication or communications were made or at the place where the communication or communications were received.
>
> (2) Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct.

18 Pa.C.S. § 2709(b.1).

- 4 -

In any event, the citation issued to Appellant, which is included in the certified record, indicates that the incident occurred at 3 W. Olive Street in the City of Scranton, Lackawanna County. *See* Non-Traffic Citation, 7/11/22. Furthermore, at the *de novo* trial, Mr. McAndrew testified that the doctor's office was in Scranton and Appellant referenced the Olive Street address as the site where the police arrived. *See* N.T. Trial, 11/2/22, at 14, 23, 66. We take judicial notice of the fact that 3 W. Olive Street, Scranton, Pennsylvania is in Lackawanna County. *See **Emert v. Larami Corp.***, 200 A.2d 901, 902 n.1 (Pa. 1964) ("Courts will take judicial notice of geographical facts such as the county in which a town or city is located."). Additionally, Appellant testified that he had opted to stay with his children in Lackawanna County rather than return to his prior home in New York. *See* N.T. Trial, 11/2/22, at 94. For any and all of the above reasons, Appellant is entitled to no relief on his claim that the case should not have been heard in Lackawanna County.

Appellant next challenges the sufficiency of the evidence to sustain his conviction. Our standard of review of that claim is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth

- 5 -

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Haahs*, 289 A.3d 100, 104 n.2 (Pa.Super. 2022) (cleaned up).

Appellant was convicted pursuant to the following provision of the harassment statute: "A person commits the crime of harassment when, with intent to harass, annoy or alarm another, the person . . . engages in a course of conduct or repeatedly commits acts which serve no legitimate purpose[.]" 18 Pa.C.S. § 2709(a)(3). "An intent to harass may be inferred from the totality of the circumstances." *Commonwealth v. Cox*, 72 A.3d 719, 721 (Pa.Super. 2013) (cleaned up). The term "course of conduct" is defined as follows:

A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously. Acts indicating a course of conduct which occur in more than one jurisdiction may be used by any other jurisdiction in which an act occurred as evidence of a continuing pattern of conduct or a course of conduct.

18 Pa.C.S. § 2709(f). "A course of conduct intended to harass, annoy or alarm a person can be based on words alone." *Commonwealth v. Lutes*, 793 A.2d 949, 961 (Pa.Super. 2002) (cleaned up).

- 6 -

Appellant argues that the Commonwealth's evidence, namely the testimony of Mr. McAndrew, was legally insufficient to establish his guilt. Specifically, Appellant asserts that he "did not threaten to kill [Mr. McAndrew], provoke a fight, or publicly post false information." Appellant's brief at 14. Rather, the statements that he made "came under the context of concerned family members taking a child to the hospital." *Id*. While Mr. McAndrew testified that Appellant "made clear, unequivocal threats in the past," on the day in question, Mr. McAndrew "didn't even know what the statements meant, though he took them as a threat." *Id*. (footnote omitted). Appellant posits that the ambiguity of the statements in the context of "concerned family members waiting to hear back from a doctor's visit" renders the evidence insufficient to prove an intent to annoy, harass, or alarm. *Id*. at 15.

The trial court summarized the pertinent evidence, which it deemed to be credible, as follows:

> Mr. McAndrew testified that he went to breakfast with Ms. Medallel, and his minor grandchildren A.M., and N.M. that morning at a restaurant in Taylor, Pennsylvania. One of the children, A.M., was experiencing stomach discomfort. While at the restaurant, Mr. McAndrew observed Ms. Medallel take a phone call from [Appellant]. Per Mr. McAndrew, [Appellant] was yelling on the phone at Ms. Medallel and Mr. McAndrew described [Appellant]'s tone as "belligerent." Mr. McAndrew testified that [Appellant] was advised over the phone that Ms. Medallel and Mr. McAndrew would be taking A.M. to a doctor's office after finishing breakfast.
>
> [Appellant] later arrived at the restaurant and a confrontation between [Appellant] and Ms. Medallel occurred in the parking lot, while Mr. McAndrew and the children were in the vehicle. Mr. McAndrew testified that [Appellant] pushed

Ms. Medallel and tried to get into the car to get to A.M. Per Mr. McAndrew, [Appellant] referred to Mr. McAndrew and Ms. Medallel as "two pieces of shit" in front of the children. [Appellant] stated that he did not want Mr. McAndrew going to the doctor's office with the children, per Mr. McAndrew's testimony.

Mr. McAndrew testified that [Appellant] followed them from Taylor to the doctor's office in Scranton and parked by them. According to Mr. McAndrew, [Appellant]'s conduct and his comments toward Mr. McAndrew made A.M. upset on the ride to the doctor's office. Mr. McAndrew and Ms. Medallel tried to calm her down. At the doctor's office, [Appellant] pulled in behind Ms. Medallel's vehicle and again tried to get in the car, according to Mr. McAndrew. Ms. Medallel and A.M. then went into the doctor's office and Mr. McAndrew stayed in the vehicle with N.M. Per Mr. McAndrew, N.M. is three years old, has autism, and is non-verbal. Mr. McAndrew testified that [Appellant] did not go inside the doctor's office and that [Appellant] told A.M. that he needed to stay outside because Mr. McAndrew was "a bad guy."

[Appellant] then stood outside of the vehicles with his arms folded, staring. Mr. McAndrew testified that the doors in the vehicle he was occupying were intentionally locked by Ms. Medallel due to the earlier circumstances and that the windows were rolled down slightly. At one point, per Mr. McAndrew's testimony, [Appellant] walked by the vehicle Mr. McAndrew was in, looking at Mr. McAndrew and said: "I am going to take care of you." [Appellant] then walked back and forth between the two vehicles and around to the front of Mr. McAndrew's vehicle, and said to Mr. McAndrew a second time, "I am going to take care of you."

Based on [Appellant]'s conduct and the size and age of [Appellant] versus Mr. McAndrew, who is 68 years old with a history of open-heart surgery, Mr. McAndrew then called 911, per Mr. McAndrew's testimony. Mr. McAndrew testified that he did not know what was going to happen when Ms. Medallel and A.M. came out of the doctor's office and unlocked the vehicle. Mr. McAndrew believed there was a possibility that [Appellant] would grab him when the vehicle was unlocked. Mr. McAndrew perceived that the words directed at him by [Appellant] were threats. Mr. McAndrew testified that [Appellant] was yelling and screaming when the Scranton Police Department responded to the 911 call.

. . . .

- 8 -

Mr. McAndrew also testified about prior incidents involving [Appellant], related to the ongoing family conflict. During a custodial exchange at Ms. Medallel's home in December 2021, approximately four months prior to the March 2022 incidents, [Appellant] came into the kitchen and, per Mr. McAndrew's testimony, said to Mr. McAndrew in front of the grandchildren, A.M. and N.M., "I am going to kill you, you piece of shit, you fucking piece of shit." Mr. McAndrew also described a similar incident where [Appellant] made the same profane and threatening comments directed at Mr. McAndrew, yelling and screaming in Ms. Medallel's kitchen in front of N.M. and A.M. Mr. McAndrew testified that [Appellant] has threatened to kill him on several occasions.

Mr. McAndrew also testified that [Appellant] made threats against Mr. McAndrew, Ms. Medallel, and Ms. Medallel's siblings prior to these incidents, stating to Ms. Medallel that he would be coming in to their hometown from the Bronx to slit their throats. Ms. Medallel also testified about these threats.

As a result of these incidents, Mr. McAndrew keeps pepper spray in his vehicle and carries it on him at all times.

Trial Court Opinion, 1/6/23, at 2-5 (cleaned up).

From our review of the certified record, the trial court's recitation of the testimony is accurate and its credibility determinations supported. As such, the Commonwealth's evidence was plainly sufficient to establish that on the day in question Appellant engaged in a course of conduct that served no legitimate purpose with the intent to harass Mr. McAndrew. **Accord Lutes**, **supra** at 961 (affirming § 2709(a)(3) convictions where intent to harass was shown by evidence that the defendants blocked the victim's path, poked him in the chest, and told him that they "would take [him] around the corner and beat him," and course of conduct was established because they "engaged in

more than one act over a short period of time"). Consequently, we have no cause to disturb Appellant's conviction or sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/20/2023